IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELIU TOSSAS CASTRO, et. al.,

Plaintiffs,

v.

MIGUEL MERCED TORRES, YAIDY CRUZ-COTTO, AND THEIR CONJUGAL PARTNERSHIP, MM TECHNOLOGY WIRELESS GROUP CORP.,

Defendants.

CIVIL NO. 14-1419 (GAG)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiffs Eliú Tossas Castro, Esteban Tossas Castro and Norman Colón Córdova ("Colón Cordova") filed the present case against Defendants Miguel Merced Torres ("Merced"), Yaidy Cruz Cotto and their Conjugal Partnership, and MM Technology Wireless Group Corp. under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and Articles 1802, 1044 and 1077 of the Puerto Rico Civil Code. Plaintiffs claim Defendants fraudulently induced them into investing in the acquisition of several communication towers in Puerto Rico, which never materialized. Instead, after paying Defendants substantial sums of money, on April 28, 2014 a federal Grand Jury issued an indictment against co-Defendant Merced for using intestate wire communications to commit fraud and money laundering against several individuals, including Plaintiffs. Co-Defendant Merced was accused of running a scam, making fraudulent representations that he was an FCC agent with the authority to collect funds and negotiate licences for

telecommunication antennas in Puerto Rico. As a result thereof, Plaintiffs allege they suffered economic and emotional damages.

Defendants were served with process on July 16, 2014 (Docket No. 4), yet never made an appearance or answered the Complaint. The Clerk of the Court entered default against them on September 5, 2014 (Docket No. 7), and the presiding District Judge referred the case to the undersigned for a hearing on damages and a subsequent report and recommendation (Docket No. 12).

On February 10, 2015, the damages hearing was held, where Plaintiffs, represented by José J. Gueits-Ortiz, Esq., appeared before this Court. The three (3) Plaintiffs testified as to the damages they suffered as a result Defendants' actions. None of the Defendants, or an attorney on their behalf, made an appearance during the hearing.[1]

### SUMMARY OF FACTS PRESENTED BY PLAINTIFFS

**A.    Plaintiff Norman Colón Córdova**.

Colón Córdova testified that he lives in Gurabo, Puerto Rico, is married, and is a civil engineer who owns a construction company. Upon questions from counsel, he stated that he paid co-Defendant Merced directly the amount of $27,500.00, divided into two (2) payments: one for $17,500.00 and the other for $10,000.00. Both of these payments were made on April 19, 2012, through personal checks. Copies of the two (2) cashed checks were shown to and authenticated by Colón Córdova and were admitted as Exhibits 1 and 2.

---

[1] The day prior to the hearing, Plaintiffs waived the right to a trial by jury via an informative motion which was noted by the court. (Docket Nos. 17 and 18). This matter was reaffirmed by Plaintiffs' counsel prior to starting the hearing.

Colón Córdova further testified he also invested an additional $80,000.00 in Defendants' fraudulent communication tower business. That amount was given directly to Plaintiff Eliú Tossas Castro on August of 2010 and Eliú Tossas Castro proceeded to give that money to co-Defendant Merced for the non-existent investment.

In addition to the economic damages suffered, Colón Córdova testified he has suffered emotionally as a result of this ordeal. Colón Córdova mentioned he has trust issues with people he knows, he has lost numerous business opportunities because of this situation and he feels cheated by Defendants. He also mentioned he has suffered family problems because of this fraud. All the money he had saved along with his wife was lost due to this situation.

**B.     Plaintiff Esteban Tossas Castro**.

Esteban Tossas Castro testified that he lives in Caguas, is married and has a teenage daughter and a teenage son. He has worked for Rocktenn Corporation for approximately sixteen (16) years, and is currently a seller for that company.

Esteban Tossas Castro testified he paid the amount of $40,000.00 directly to co-Defendant Merced on May 6, 2011 via a personal check. A copy of that check was seen and authenticated by the witness and the same was admitted as Exhibit 3 by this Court.

He stated he lost an additional $117,000.00 in the fraudulent investment represented by Defendants. That amount was paid in three (3) payments, to wit: $100,000.00; $12,000.00 and $5,000.00, respectively. The payment of $100,000.00 was made via a personal check given to Plaintiff Eliú Tossas Castro on September 13, 2010, who in turn hand delivered the money to co-Defendant Merced. A copy of that check was seen

and authenticated by this witness and admitted as Exhibit 4. Eliú Tossas Castro proceeded to give that money to co-Defendant Merced.

The payment of $12,000.00 was made through a personal check given by Esteban Tossas Castro to Eliú Tossas Castro on January 4, 2011. A copy of that check was seen and authenticated by this witness and admitted by the Court as Exhibit 5. The $12,000.00 was also given by Eliú Tossas Castro to Merced for the fraudulent communication towers investment. Finally, Esteban Tossas Castro testified that the payment of $5,000.00 was made via a personal check given to Eliú Tossas Castro on April 19, 2011. A copy of that check was seen and authenticated by Mr. Esteban Tossas and admitted as Exhibit 6. This witness testified that that those $5,000.00 were also given by Eliú Tossas Castro to Merced to invest in the alleged tower venture.

Esteban Tossas Castro also mentioned that his brother Eliú Tossas Castro signed a promisory note and put up his house as collateral in order to obtain a loan of $70,000.00 from a friend, Gerardino Ayala (deceased), and invested that amount in Esteban Tossas Castro's name in Defendants' fraudulent scheme. As of this date that debt is outstanding and the creditors are threatening with legal action against Eliú Tossas Castro if that debt is not paid immediately.

In addition, to the economic losses mentioned by him, Esteban Tossas Castro went into detail about the emotional damages that he has suffered as a result of this ordeal. He mentioned he mortgaged his family home in order to invest in the fraudulent scheme and the family savings were lost. This situation caused a strain in his marriage of more than twenty (20) years. His wife took a leave without pay of two (2) years from her job because

she trusted the new business and the business was supposed to pick up in three (3) to six (6) months. This leave represented a $64,000.00 loss. When the two (2) years passed by, his children were in high school and it was difficult for them to change school and his wife started to work in Aguadilla. For the first time, the family was separated.

As a result of the actions of the Defendants, Esteban Tossas Castro testified he feels embarrassed, cheated and he feels he cannot trust people anymore. He testified his marriage was at risk and their marriage savings for twenty-two (22) years were lost.

**C.     Plaintiff Eliú Tossas Castro**.

Eliú Tossas Castro testified he lives in Caguas with his wife, his two (2) young sons and his wife's teen daughter from a previous relationship. For the last ten (10) years, he has owned a corporation that sells, installs and gives maintenance to air conditioner units owned by both residential and commercial clients. Eliú Tossas Castro invested the amount of $393,000.00, which was paid directly to Defendant Merced. That amount was divided in payments of $180,000.00; $55,000.00; $25,000.00; $5,000.00; $5,000.00; $36,000.00; $17,000.00 and $70,000.00.

The payment of $180,000.00 was made on September 21, 2010 through a Manager's Check from Doral Bank that was given to Merced. A copy of the stub of that check was seen and authenticated by Eliú Tossas Castro as the one belonging to the payment given to the co-Defendant Merced on that day, and was admitted as Exhibit 7. Eliú Tossas Castro further testified the money used for this payment came from a $100,000.00 loan from

Plaintiff Esteban Tossas Castro, and another loan of $80,000.00 from Plaintiff Colón Cordova. Those two (2) witnesses had previously testified they had given those exact amounts to Eliú Tossas Castro.[2]

The payment of $55,000.00 was made through a personal check given to co-Defendant Merced on August 10, 2010. A copy of that check was seen and authenticated by this witness and admitted Exhibit 8.

Eliú Tossas Castro testified that on that same day he also gave a personal check for $25,000.00 to Merced. A copy of that second check was authenticated by this witness and admitted as Exhibit 9.

A payment of $5,000.00 to Merced was made on January 5, 2011 using a personal check. A copy of that check was authenticated and admitted as Exhibit 10.

This Plaintiff gave an additional $5,000.00 to co-Defendant Merced on January 8, 2011 using a personal check. Eliú Tossas Castro authenticated a copy of that check and it was admitted as Exhibit 11.

Eliú Tossas Castro also testified that in late January of 2011, he gave Merced the amount of $36,000.00 in cash. He clarified that $16,000.00 of this particular sum belonged to another brother, Humberto Tossas, and $10,000.00 to Jonathan Tossas, his

---

[2] The sum of $180,000.00 cannot be credited to Eliú Tossas Castro because $80,000.00 belonged to Plaintiff Colón Córdova and $100,000.00 belonged to his brother Plaintiff Esteban Tossas Castro and they have both already claimed these amounts. Neither can the $17,000.00 payment given some time in early 2011 be credited to Eliú Tossas Castro since that amount also belonged to Plaintiff Esteban Tossas Castro and he has already claimed it. Plaintiffs are not entitled to double recovery for the same loss.

Eliu Tossas Castro, et. al v. Miguel Merced Torres, et al
Civil No. 14-1419 (GAG)
Report and Recommendation
Page 7

nephew.[3] Eliú Tossas Castro indicated that the reason why said payment was made in cash was because Merced stated he needed that specific payment using that method.

Plaintiff also corroborated that Esteban Tossas Castro gave him a payment of $12,000.00 some time in 2011 and an additional payment of $5,000.00. He also gave this money directly to Merced in cash. Eliú Tossas Castro did not recall the exact dates of these payments.[4]

With regards to the promissory note and mortgaged property mentioned by Esteban Tossas Castro during this testimony, Eliú Tossas Castro certified that he did, in fact, sign a promissory note against his house in order to receive $70,000.00 loaned from Gerardino Ayala, who is now deceased. This amount was given in cash to Merced. He further stated that presently, Ayala's heirs are threatening him with legal action if the money is not paid within the next couple of days. Eliú Tossas Castro further explained those $70,000.00 were also given in cash to Merced, since the latter said he needed that money immediately for the investment and that he could not wait two (2) or three (3) days for a check to clear.

Furthermore, Eliú Tossas Castro testified he paid the sum of $15,000.00 for several air conditioner units that were installed in a home belonging to co-defendant Merced. Although Merced was supposed to pay for those air conditioner units, Eliú Tossas Castro

---

[3] The $16,000.00 given by Humberto Tossas and the $10,000.00 given by Jonathan Tossas may not be credited to Eliú Tossas Castro. Humberto Tossas and Jonathan Tossas are not parties to this case. Only, the $10,000.00 Eliú Tossas Castro contributed to this payment will be credited to his benefit.

[4] The amount of $17,000.00 will not be credited to Eliú Tossas Castro because this amount is already claimed by Plaintiff Esteban Tossas Castro.

indicated Merced told him that said amount was going to be credited to this Plaintiff's investment in the communication towers.

In addition to his economic losses, this Plaintiff testified the fraud committed against him has caused him serious problems in his marriage. His wife was opposed to the investment from the very beginning, so when its fraudulent nature was discovered, it caused a serious strain in their relationship. Since this witness invested all of his savings and available funds in the Defendants' non-existent business, he ended up losing a commercial property and a vehicle and he became up to seven (7) months arrears in its mortgage payments of his house. Finally, Eliú Tossas Castro testified he feels cheated and embarrassed, since because of him, some of his family members and closest friends also ended up investing and ultimately losing their savings in the business offered by the Defendants.

## LEGAL ANALYSIS

In the case at bar, the Court entered default against Defendants when they failed to appear or otherwise answer. When the amount of damages is in dispute or not readily ascertainable from the pleadings, a post-default hearing is necessary to determine the amount of the award. See Lincoln Road Productions, Inc. v. Reign Entertainment Group, Slip Copy, 2014 WL 6893663 (D.P.R. 2014) (*quoting* Graham v. Malone Freight Lines, Inc., 314 F.3d 7, 16 (1st Cir.1999).

After having the opportunity to listen and observe the Plaintiffs during their testimony and after examining the exhibits offered by them, this Court makes the following recommendations with regards to the awards for damages in this case.

As to Plaintiff Norman Colón Córdova, it is recommended he be awarded $107,500.00 for his economic losses and an additional $25,000.00 for the emotional damages suffered by him for a total of $132,500.00.

With regards to Plaintiff Esteban Tossas Castro, it is recommended he be awarded $157,000.00 for his economic losses and an additional $25,000.00 for the emotional damages suffered by him for a total of $182,000.00.

Finally, as to Plaintiff Eliú Tossas Castro, it is recommended he be awarded $185,000.00 for his economic losses and an additional $50,000.00 for the emotional damages suffered by him for a total of $235,000.00.

Furthermore, under the Racketeer Influenced and Corrupt Organizations Act, the Plaintiffs in this case are entitled to have their award for damages tripled, plus the payment of the costs incurred and a reasonable award for attorney's fees. See 18 U.S.C. § 1964(c).

Thus, it is recommended that Co-defendants Miguel A. Merced Torres, MM Technology Wireless Group, Corp. (a/k/a MMTWG, Corp.) and the Conjugal Legal Partnership comprised between Miguel Merced Torres and Yaidy Cruz Cotto are ordered to pay Norman Colón Cordova the total amount of $397,500.00; to Esteban Tossas Castro the total amount of $546,000.00; and to Eliú Tossas Castro the total amount of $705,000.00; plus the payment of costs and attorney's fees.

## CONCLUSION

For all the reasons stated above, the undersigned Magistrate Judge recommends that Plaintiffs be awarded the following amounts from co-Defendants Miguel A. Merced Torres, MM Technology Wireless Group, Corp.(a/k/a MMTWG, Corp.) and the Conjugal Legal

Partnership comprised between Miguel Merced Torres and Yaidy Cruz Cotto as follows:

– Plaintiff Norman Colón Córdova the amount of $397,500.00;

– Plaintiff Esteban Tossas Castro the amount of $546,000.00;

– Plaintiff Eliú Tossas Castro the amount of $705,000.00.

It is also recommended that Plaintiffs be awarded costs and attorney's fees.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. See also, Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150–151(1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986) and Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, this 24th day of February of 2015.

            s/CAMILLE L. VELEZ-RIVE
            CAMILLE L. VELEZ-RIVE
            UNITED STATES MAGISTRATE JUDGE